Rachel Seaton Brownell (No. 021842011)
  RSBrownell@littler.com
LITTLER MENDELSON P.C.
  1085 Raymond Blvd., One Newark Center, 8th Floor
  Newark, NJ 07102
  Telephone:  973.848.4762

Jason C. Schwartz (*pro hac vice*)
  JSchwartz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
  1700 M Street, NW
  Washington, D.C. 20036
  Telephone:  202.955.8500

*Attorneys for Defendants (additional counsel listed on signature block)*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT ASARO-ANGELO, Commissioner of the New Jersey Department of Labor and Workforce Development, <br><br> *Plaintiff*, <br><br> v. <br><br> AMAZON.COM, INC., and AMAZON LOGISTICS, INC., <br><br> *Defendants*. | Hon. Madeline Cox Arleo <br><br> No. 2:25-cv-18014-MCA-JBC <br><br> **ORAL ARGUMENT REQUESTED** <br><br> Motion Day: January 20, 2026 |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO STAY OR, IN THE ALTERNATIVE,
<u>TO DISMISS, STRIKE, OR DISQUALIFY</u>**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................. 1

FACTUAL BACKGROUND .............................................................................. 4

    A.    Amazon Flex, Delivery Partners, and the Terms of Service ............... 4

    B.    Prior Flex Litigation and Resulting Arbitrations ................................. 8

    C.    The Commissioner's Use of a Representative Mechanism and Private Class-Action Counsel to Pursue Monetary Claims for Unnamed Individuals ........................................................................... 9

ARGUMENT ...................................................................................................... 11

I.    The Court Should Stay This Action ............................................................ 13

    A.    Section 3 of the FAA and Parallel State Arbitration Statutes Mandate a Complete Stay ................................................................... 13

    B.    Alternatively, the Court Should Stay All Claims Under Its Inherent Authority ............................................................................. 17

II.    The Commissioner Lacked Legal Authority to Bring This Case ................. 19

    A.    The Complaint Is a Nullity Because the Commissioner Did Not File the Verified Complaint the Statute Requires ............................. 20

    B.    The Court Should Dismiss—or at Minimum Disqualify Counsel—Because the Commissioner's Lawyers Were Not Lawfully Appointed ......................................................................... 22

III.    Even If the Complaint Could Proceed, the Complaint Fails to State a Claim .......................................................................................................... 26

    A.    The Complaint Fails to State Any Plausible Claim ............................ 27

        1.    The Complaint Does Not Identify a Single Allegedly Injured Worker .................................................................... 27

        2.    The Complaint Fails to Plead Any Specific Minimum-Wage, Overtime, or Sick-Leave Violation .............................. 29

    B.    The Commissioner's Claims for Individualized Damages Must Be Dismissed or Stricken ................................................................. 33

CONCLUSION .................................................................................................. 34

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A.A. v. Gramiccioni,*
122 A.3d 353 (N.J. App. Div. 2015) .................................................................... 20

*Acosta v. Jani-King of Okla., Inc.,*
905 F.3d 1156 (10th Cir. 2018) ........................................................................... 29

*Arafa v. Health Express Corp.,*
233 A.3d 495 (N.J. 2020) ..................................................................................... 14

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ........................................................................................ 27, 31

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) .......................................................................... 27, 30, 31, 33

*Cheng v. WinCo Foods LLC,*
2014 WL 2735796 (N.D. Cal. June 11, 2014) ..................................................... 23

*Clinton v. Jones,*
520 U.S. 681 (1997) ............................................................................................. 18

*College Blvd. Nat'l Bank v. Credit Sys., Inc.,*
1994 WL 242670 (D. Kan. May 18, 1994) .......................................................... 17

*Crawford v. West Jersey Health Sys.,*
847 F. Supp. 1232 (D.N.J. 1994) ......................................................................... 18

*Davis v. Abington Mem'l Hosp.,*
765 F.3d 236 (3d Cir. 2014) ................................................................................. 31

*Deering v. Graham,*
2015 WL 424534 (D.N.J. Jan. 30, 2015) ............................................................. 18

*DeHart v. HomeEq Servicing Corp.,*
679 F. App'x 184 (3d Cir. 2017) .......................................................................... 34

*Driscoll v. Burlington-Bristol Bridge Co.,*
8 N.J. 433 (1952) ............................................................................................ 22, 25

*EEOC v. Waffle House, Inc.,*
534 U.S. 279 (2002) ............................................................................................. 16

ii

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Facta Health, Inc. v. Pharmadent, LLC,*
 2020 WL 5957619 (D.N.J. Oct. 8, 2020)............................................................ 16

*FDIC v. Ernst & Young LLP,*
 2024 WL 247076 (E.D. La. Jan. 23, 2024)........................................................ 17

*Flexi-Van Leasing, Inc. v. Through Transp. Mut. Ins. Ass'n,*
 108 F. App'x 35 (3d Cir. 2004)........................................................................ 15

*Freeman v. Vicchiarelli,*
 827 F. Supp. 300 (D.N.J. 1993)........................................................................ 24

*In re Frescati Shipping Co.,*
 886 F.3d 291 (3d Cir. 2018) ............................................................................. 15

*Gov't Emps. Ins. Co. v. Elkholy,*
 2024 WL 5202550 (D.N.J. Dec. 23, 2024)................................................... 17, 18

*Harper v. Amazon.com Services, Inc.,*
 2022 WL 17751465 (D.N.J. Dec. 19, 2022)......................................... 1, 8, 14, 19

*Harper v. Amazon.com Servs., Inc.,*
 12 F.4th 287 (3d Cir. 2021) ...................................................................... 8, 10, 14

*Harper v. Amazon.com Servs., Inc.,*
 2024 WL 3833522 (D.N.J. Aug. 15, 2024) ...................................................... 14

*Hollingsworth v. Perry,*
 570 U.S. 693 (2013)........................................................................................... 23

*Houston Cas. Co. v. Kinsale Ins. Co.,*
 2025 WL 2779139 (D.N.J Sept. 30, 2025) ....................................................... 15

*Kindred Nursing Ctrs. Ltd. v. Clark,*
 581 U.S. 246 (2017)............................................................................................. 2

*Lisowski v. Walmart Stores, Inc.,*
 552 F. Supp. 3d 519 (W.D. Pa. 2021)............................................................... 34

*K.J. ex rel. Lowry v. Div. of Youth & Family Servs.,*
 363 F. Supp. 2d 728 (D.N.J. 2005) .................................................................. 33

*Maradiaga v. Pyle,*
 2012 WL 3038596 (D.N.J. July 25, 2012)........................................................ 31

iii

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Neal v. Asta Funding, Inc.*,
2016 WL 3566960 (D.N.J. June 30, 2016)......................................................... 16

*In re Opinion 697*,
188 N.J. 549 (2006)............................................................................................. 24

*Perez v. Sanchez*,
2016 WL 721032 (D.S.C. Feb. 24, 2016)........................................................... 28

*In re Plum Baby Food Litig.*,
637 F. Supp. 3d 210 (D.N.J. 2022) ..................................................................... 11

*Port Auth. v. Arcadian Corp.*,
189 F.3d 305 (3d Cir. 1999) ................................................................................ 33

*Rivera v. Dealer Funding, LLC*,
178 F. Supp. 3d 272 (E.D. Pa. 2016) ................................................................... 34

*Rodriguez v. Canada Dry Bottling Co.*,
2015 WL 5770502 (D.N.J. Sept. 30, 2015).......................................................... 30

*Sanford v. Bracewell & Guiliani, LLP*,
618 F. App'x 114 (3d Cir. 2015)........................................................................... 16

*Sheth v. Artech LLC*,
2025 WL 1588021 (D.N.J. June 5, 2025)....................................................... 18, 19

*Sirin v. Portx, Inc.*,
2020 WL 6194018 (D.N.J. Oct. 22, 2020) ........................................................... 32

*Smith v. Spizzirri*,
601 U.S. 472 (2024)............................................................................................. 13

*State v. OptumRx, Inc.*,
2025 WL 3251201 (La. Ct. App. Nov. 21, 2025) ............................................... 22

*Tan v. PKLL Inc.*,
2024 WL 1673352 (D.N.J. Apr. 18, 2024)........................................................... 31

*Thiebaut v. Colorado Springs Utils.*,
455 F. App'x 795 (10th Cir. 2011)....................................................................... 23

*Town of Smyrna v. Kent Cnty. Levy* Court,
2004 WL 261745 (Del. Ch. Nov. 9, 2004) .......................................................... 16

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*United States v. Giraud*,
— F.4th —, 2025 WL 3439752 (3d Cir. 2025) ................................................... 24

*United States v. Philip Morris Inc.*,
153 F. Supp. 2d 32 (D.D.C. 2001) ............................................................. 28, 29

*United States v. Providence Journal Co.*,
485 U.S. 693 (1988) ..................................................................................... 21

*Va. House of Delegates v. Bethune-Hill*,
587 U.S. 658 (2019) ..................................................................................... 23

*Westendorf v. Gateway 2000, Inc.*,
No. 16913, 2000 WL 307369 (Del. Ch. Mar. 16, 2000) .................................... 14

### Statutes

9 U.S.C. § 3 ..................................................................................... 12, 13

Del. Code tit. 10, § 5703 ...................................................................... 12, 13

N.J. Stat. Ann.
§ 2A:23B-7 ......................................................................... 12, 13
§ 34:1A-1.12 ........................... 1, 2, 3, 9, 10, 15, 17, 19, 20, 33, 34
§ 34:11–56a4 ................................................................................. 31
§ 34:11D-2 ..................................................................................... 32
§ 34:11D-6 ..................................................................................... 32
§ 34:11D-7 ..................................................................................... 32
§ 52:17A-11 .............................................................................. 11, 22
§ 52:17A-13 ................................................................................... 22

### Rules

N.J. Ct. R. 1:4-7 ................................................................................. 20

### Other Authorities

Jahan Sagafi & Jennifer L. Liu, *Class Actions: A Path Through the
Darkness?* (Jan. 2014), https://t.ly/aKHxK .......................................... 10

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

Office of the Attorney General of the State of New Jersey, *Request for Qualifications: Complex Litigation* (2023), https://www.nj.gov/oag/law/pdf/rfqs/Request-for-Qualifications-Complex-Litigation-2023-0613.zip ................................................................... 11

Outten & Golden, *Issues: Government Representation*, https://www.outtengolden.com/issues/government-representation (last visited Dec. 9, 2025)................................................................................. 10

Amazon moves for a stay of this action under Section 3 of the Federal Arbitration Act and state law analogs, or alternatively under the Court's inherent authority, because the claims asserted here must be arbitrated individually. If the case is not stayed, Amazon moves to dismiss based on statutory prerequisites the Commissioner of Labor failed to satisfy, to disqualify his unlawfully appointed private counsel, to dismiss or strike the legally unavailable claims for individualized monetary relief, and to dismiss the remainder of the Complaint for failure to state a claim.

## INTRODUCTION

The State's lawsuit attempts to do what Amazon Flex Delivery Partners expressly agreed they would not do: pursue their individual wage claims in court, on a representative basis, instead of in individual arbitration as their agreements require. Those arbitration commitments have been enforced by multiple courts, including by the Third Circuit and this District in *Harper v. Amazon.com Services, Inc.*, 2022 WL 17751465 (D.N.J. Dec. 19, 2022), which compelled identical misclassification and wage claims to individual arbitration. The law in this District is settled: these claims must be arbitrated individually—not litigated in court and not pursued on a representative basis.

Yet the Commissioner of Labor now seeks to do exactly what those agreements prohibit. Invoking a statute that expressly authorizes the Commissioner to seek relief for unnamed members of a "class," N.J.S.A. § 34:1A-1.12(i), and

1

represented by private class-action counsel, the Commissioner now seeks tens of millions of dollars in individualized backpay, liquidated damages, and worker-specific penalties on behalf of unnamed Delivery Partners.

But arbitration agreements cannot be evaded that easily—the FAA, like its state-law analogs, "displaces any rule that covertly accomplishes" an end-run around agreements to arbitrate. *Kindred Nursing Ctrs. Ltd. v. Clark*, 581 U.S. 246, 251 (2017). New Jersey law itself underscores the same principle: when the Commissioner seeks individualized monetary relief under the statute he invokes, he must do so "as if the claims were brought directly by the victims." N.J.S.A. § 34:1A-1.12(i). He therefore steps squarely into the Delivery Partners' shoes and is bound by the same arbitration commitments that foreclose pursuing these claims in court. Because the central issues raised here—misclassification, alleged unpaid wages, and entitlement to worker-specific remedies—are indisputably referable to arbitration, and *have* been referred to arbitration, Section 3 of the FAA and the state arbitration statutes require the Court to stay this action until arbitration has occurred "in accordance with the terms of the agreement." And even if Section 3 and those state-law mandates did not compel that result, the same overlapping issues warrant a complete stay under the Court's inherent authority.

Even if the Court did not stay the action, the Complaint cannot proceed because the Commissioner failed to satisfy the statutory prerequisites to bringing suit.

The statute he invokes requires the Commissioner to "mak[e], sig[n], and fil[e] a verified complaint," and the Supreme Court of New Jersey has held that the absence of a required verification renders the action a nullity. The State also may not appear through private counsel who were not appointed in accordance with the statutory prerequisites governing the Attorney General's delegation of sovereign authority; that defect likewise bars the suit from going forward, or at minimum requires the disqualification of counsel who lack power to represent the State.

And even beyond these threshold defects, the Complaint still fails to state a claim. As an initial matter, the Complaint's core premise is wrong: Flex Delivery Partners are not Amazon employees, as the pleading itself shows—Delivery Partners are independent contractors; they choose whether and when to work, use their own vehicles and equipment, may work for competitors at the same time, and perform deliveries away from Amazon's places of business. But even putting that aside, the Complaint does not come close to satisfying basic pleading standards; it offers only conclusory assertions rather than the factual allegations required to state a viable wage-and-hour claim under *Twombly* and *Iqbal*.

Finally, even if the Complaint survived all these defects—which it cannot— the Commissioner's individualized monetary claims still could not proceed. Because N.J.S.A. § 34:1A-1.12 requires him to pursue such claims "as if" they were brought directly by the Delivery Partners, he is limited to the remedies they

3

themselves could obtain—and they waived any entitlement to class, collective, or representative monetary relief, leaving no basis for the Commissioner to recover such awards.

In short, the Commissioner seeks to litigate individualized monetary claims that (1) belong in arbitration, (2) cannot be pursued in court by the Commissioner or his counsel, (3) are not plausibly alleged, and (4) are legally unavailable in a collective action. The FAA, New Jersey sovereign-authority requirements, federal pleading standards, and state employment law all foreclose this attempted end-run around binding arbitration agreements. The Court should stay this action pending individual arbitrations or, at minimum, dismiss the case for failure to satisfy statutory prerequisites to suit, including the unlawful appointment of counsel, disqualify counsel who lack authority to represent the State, dismiss or strike the State's legally unavailable damages claims, and dismiss the remainder for failure to state a claim.

## FACTUAL BACKGROUND

### A.    Amazon Flex, Delivery Partners, and the Terms of Service

The Complaint's factual allegations depict a local, app-based delivery model performed by independent contractors. Affiliates of Amazon.com, Inc. sell products through a variety of channels, including online platforms, mobile applications, and retail locations such as Whole Foods Market. *See* Compl. ¶¶ 2, 4. Amazon Logistics, Inc. supports these operations by coordinating the movement of packages from

4

Amazon facilities to several different third-party delivery providers, one of which is independent delivery partners using the Flex mobile application. *See id.* ¶¶ 2, 4, 28. Through Flex, independent contractors—referred to as "Delivery Partners"—use their own vehicles to transport packages they collect from designated Amazon locations after signing up for delivery opportunities at their convenience in the Flex app. *See id.* ¶¶ 5–6.

Individuals who wish to use Flex download the app, create an account, and select the geographic area in which they wish to operate. *See* Compl. ¶ 9. The Flex app displays delivery opportunities known as "Blocks," which are short, defined delivery windows—typically two to six hours—that a participant may choose to accept or decline. *See id.* ¶¶ 9–10, 43. The Complaint does not allege that Delivery Partners must work particular hours, accept a minimum number of Blocks, or remain available during any specified periods. Nor does the Complaint allege that Delivery Partners must follow any particular routes, sequencing, or methods in completing deliveries; nothing in the pleadings suggests that Amazon dictates how Delivery Partners navigate between stops, in what order they make deliveries, or how they organize or load packages in their personal vehicles.

When a Delivery Partner accepts a Block, they travel to the designated Amazon location—such as a delivery station or Whole Foods store—scan and load the items designated for that Block, and then complete the scheduled deliveries

5

independently using information supplied through the Flex app.  *See* Compl. ¶¶ 5, 44–47.  The Complaint alleges that this work occurs away from Amazon facilities and does not allege any in-person supervision of these activities.  *See id.* ¶ 46; *cf. id.* ¶¶ 9, 11, 58.  At the pickup point, all selection, picking, sorting, batching, organizing, and staging of items have already been completed by Amazon employees or store personnel; the Complaint does not allege that Delivery Partners handle packages inside Amazon facilities or participate in warehouse-level operations.  In line with that local, point-to-point structure, the Complaint describes deliveries that begin and end within New Jersey: Delivery Partners collect items from local facilities or stores and deliver them within the same region, and the Complaint does not allege that they transport items across state lines or participate in any interstate leg of the delivery chain.

Delivery Partners are responsible for providing and maintaining the tools needed to perform their work.  They use their own vehicles and smartphones and pay for their own fuel, insurance, tolls, parking, and vehicle-related expenses.  *See* Compl. ¶¶ 19, 38, 74.  The Complaint does not allege that Delivery Partners are prohibited from performing similar delivery services for other companies while using Flex—such as DoorDash, Uber Eats, Instacart, and Grubhub—and acknowledges that Amazon classifies Delivery Partners as independent contractors.  *See id.* ¶¶ 1, 8.

To participate in Flex, individuals must accept the Amazon Flex Independent Contractor Terms of Service. *See* Compl. ¶ 8; Declaration of Nick Jones ¶ 23. Acceptance occurs in two steps: first, the prospective Delivery Partner clicks a button signifying acceptance of the terms; second, they click a separate screen specifically agreeing to arbitration. Jones Decl. ¶ 25. Section 11 of the terms contains a mutual agreement to arbitrate "any dispute or claim, whether based on contract, common law, or statute, arising out of or relating in any way to this Agreement, . . . to your participation in the Program, or to your performance of Services." *Id.* Ex. A § 11a; *id.* Ex. C § 11a; *id.* Ex. D § 11a.

The terms further provide that arbitration must proceed on an individual basis only and that Delivery Partners "waive any right to participate in or receive any relief from any non-individual proceeding." Jones Decl. Ex. A § 11d; *id.* Ex. C § 11d; *id.* Ex. D § 11d. The arbitration agreement incorporates the Commercial Arbitration Rules of the American Arbitration Association, under which "the arbitrator must resolve . . . disputes" concerning "the arbitrability of claims." *Id.* Ex. A §§ 11k, 11*l*; *id.* Ex. C §§ 11i, 11j; *id.* Ex. D §§ 11i, 11j. The agreement "is governed by the Federal Arbitration Act and applicable federal law," and that if "for any reason, the Federal Arbitration Act is held . . . not to apply . . . the law of the state of Delaware" will govern. *Id.* Ex. A § 12; *id.* Ex. C § 12; *id.* Ex. D § 12.

7

## B.    Prior Flex Litigation and Resulting Arbitrations

In 2019, private plaintiffs represented by members of the plaintiffs' employment bar filed a putative class action in this District alleging that individuals who used the Amazon Flex platform were misclassified under New Jersey wage-and-hour law as "independent contractors," rather than "employees."

Following an appeal to the Third Circuit, *see Harper v. Amazon.com Servs., Inc.*, 12 F.4th 287 (3d Cir. 2021), the Chief Judge of this District—then-Chief Judge Wolfson—held in *Harper* that Flex Delivery Partners' misclassification and wage claims are subject to arbitration and must be resolved on an individual basis according to the Flex Terms of Service, *see Harper v. Amazon.com Servs., Inc.*, 2022 WL 17751465 (D.N.J. Dec. 19, 2022).  The court accordingly compelled the *Harper* plaintiffs' claims to proceed in individual arbitration. *See id.* at *11.

Delivery Partners are in fact pursuing misclassification and wage-and-hour allegations through individual arbitration consistent with those agreements.  For example, in addition to Mr. Harper, at least 24 individuals contending to be New Jersey Delivery Partners notified Amazon of their intent to initiate individual arbitrations asserting misclassification and related wage claims.  Declaration of Kathleen M. O'Sullivan ¶ 3.  These pending or threatened arbitrations raise the same underlying issues—classification, compensation, and alleged statutory violations—that the Commissioner now seeks to litigate on a representative basis in this action.

8

C.      **The Commissioner's Use of a Representative Mechanism and Private Class-Action Counsel to Pursue Monetary Claims for Unnamed Individuals**

The Commissioner brings this action on behalf of "thousands" of unnamed individuals who use the Flex platform (Compl. ¶ 16), but the Complaint does not identify a single Delivery Partner on whose behalf relief is sought.  It does not allege a single workweek in which any particular individual earned less than minimum wage, worked more than 40 hours without overtime, or was denied sick leave.  Nor does it allege any specific instance of an unpaid wage, deduction, or statutory violation tied to any individual.  Instead, the Complaint contains generalized assertions about Flex's structure and seeks individualized monetary remedies allegedly "owed to Drivers" it does not name.  *Id.* at 20 (demand for relief).

To pursue these unnamed individuals' claims in court, the Commissioner relies on a statutory mechanism that allows him to seek individualized monetary relief "for one or more unnamed members of a class" and to pursue such relief "as if the claims were brought directly by the victims."  N.J.S.A. § 34:1A-1.12(i); *see* Compl. ¶ 25 (bringing "this action pursuant to N.J.S.A. § 34:1A-1.12(h)").  The statute creates an attorney-client–style relationship between the Commissioner's counsel and the unnamed individuals, providing that communications between them are privileged "as would be a communication between an attorney and a client."  N.J.S.A. § 34:1A-1.12(h).  That same statute also conditions the Commissioner's authority to

9

sue on "making, signing, and filing a verified complaint." *Id.* § 34:1A-1.12(i). The Complaint filed in this case contains no such verification by the Commissioner or by anyone with personal knowledge.

The claims asserted through this representative mechanism resemble the allegations previously litigated by private plaintiffs in *Harper*, including assertions concerning classification, the structure of Flex Blocks, and the compensation Flex participants receive. *Compare* Compl. ¶¶ 1, 3, 20–21, 61–62, 78–85, 111–18, *with Harper*, 12 F.4th at 292.

To prosecute these claims on behalf of the unnamed individuals, the Attorney General retained Outten & Golden LLP as "Special Counsel." *See* Compl. at 22 (signature block); Brownell Decl. Ex. B (September 29, 2025 Retention Agreement between Outten & Golden LLP and the Attorney General of the State of New Jersey). Outten & Golden is a plaintiffs'-side class-action firm that publicly describes itself as "a leading firm for class and collective actions"[1] and has written about adopting "creative" approaches to navigate "around" what it characterizes as a "conservative-dominated Supreme Court['s]" arbitration jurisprudence.[2]

---

[1]   Outten & Golden, *Issues: Government Representation*, https://www.outten-golden.com/issues/government-representation (last visited Dec. 9, 2025).

[2]   Jahan Sagafi & Jennifer L. Liu, *Class Actions: A Path Through the Darkness?* (Jan. 2014), https://t.ly/aKHxK.

The Attorney General retained Outten & Golden through a Request for Qualifications ("RFQ") that specified a contingency-fee structure for outside counsel. The RFQ states that counsel would be compensated "as a contingency fee percentage of the monetary recovery in the assigned matter." Request for Qualifications: Complex Litigation (2023) at 7.[3] The RFQ is publicly posted on the Attorney General's website, and courts in this District routinely take judicial notice of such official materials. *See, e.g.*, *In re Plum Baby Food Litig.*, 637 F. Supp. 3d 210, 219–20 (D.N.J. 2022). Outten & Golden submitted its proposal in response to that RFQ and was retained pursuant to its contingency-fee structure. *See* Brownell Decl. Ex. B. New Jersey law requires a legislative appropriation for the appointment of special counsel, N.J.S.A. § 52:17A-11, and no such appropriation exists for this retention.

## ARGUMENT

This action cannot proceed in court. The Commissioner seeks monetary relief on behalf of unnamed Delivery Partners who agreed to resolve these very claims exclusively through individual arbitration, and courts—including the Third Circuit and then-Chief Judge Wolfson in *Harper*—have already compelled identical Flex

---

[3]    Office of the Attorney General of the State of New Jersey, *Request for Qualifications: Complex Litigation* (2023), https://www.nj.gov/oag/law/pdf/rfqs/Request-for-Qualifications-Complex-Litigation-2023-0613.zip    (*archived    at* https://web.archive.org/web/20251210061325/https://www.nj.gov/oag/law/pdf/rfqs/Request-for-Qualifications-Affirmative-Labor-2023-0705.zip (last visited Dec. 9, 2025)).

misclassification claims to arbitration under the same agreement. Once claims are "referable to arbitration" under a written agreement, the Federal Arbitration Act and the state arbitration statutes require that the court "shall" stay the action. 9 U.S.C. § 3; *see* Del. Code tit. 10, § 5703; N.J.S.A. § 2A:23B-7(g). And even apart from arbitration statutes, the same issues the Commissioner presses here—misclassification, alleged unpaid wages, and entitlement to individualized monetary relief—are already the subject of pending and threatened arbitrations by Delivery Partners, making a complete stay independently appropriate to avoid parallel, duplicative proceedings.

Even if the action were permitted to proceed, the Commissioner's claims suffer from multiple, foundational defects that require dismissal. The Commissioner's claims for individualized damages are legally unavailable, and the Commissioner failed to satisfy the statutory prerequisites to invoke the State's sovereign authority: the Complaint is unverified, and the lawyers purporting to represent the State were not lawfully appointed. The Commissioner's claims are similarly deficient on the merits. The Complaint names no injured Delivery Partner, alleges no specific workweek, and pleads no facts establishing any wage violation—and thus fails to state a claim under Rule 12(b)(6).

## I.      The Court Should Stay This Action

Section 3 of the FAA and its state-law analogs mandate a stay, and even if they did not, the Court should still stay this action under its inherent authority because parallel arbitrations are imminent or already proceeding.

### A.      Section 3 of the FAA and Parallel State Arbitration Statutes Mandate a Complete Stay

Section 3 of the FAA resolves this motion.  The statute provides that when a claim is brought involving "any issue" that is "referable to arbitration under an agreement in writing," the court "shall" stay the "action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.  The Supreme Court has made clear that this command is "impervious to judicial discretion": once an issue falls within a binding arbitration agreement, the court "must" stay the case. *Smith v. Spizzirri*, 601 U.S. 472, 476 (2024).  The same mandatory stay rule appears in the applicable state arbitration statutes: Delaware law directs that "[a]ny action or proceeding . . . involving an issue subject to arbitration, shall be stayed," Del. Code tit. 10, § 5703, and New Jersey law similarly requires courts to "stay any judicial proceeding that involves a claim subject to [an] arbitration," N.J.S.A. § 2A:23B-7(g).

These rules apply squarely here.  Delivery Partners agreed that any dispute or claim arising out of or relating to their participation in Flex would be resolved exclusively through individual arbitration, and they expressly waived any right to

pursue or receive relief in a representative or non-individual proceeding. *See* p. 7, *supra*. Those agreements specify that the FAA governs—and it does—but even if the FAA were held inapplicable, the agreements provide that Delaware law applies, which is "consistent" with the FAA and also requires individual arbitration. *Westendorf v. Gateway 2000, Inc.*, No. 16913, 2000 WL 307369, at *3 (Del. Ch. Mar. 16, 2000), *aff'd*, 763 A.2d 92 (Del. 2000); *see* p. 7, *supra*. And even if choice of law rules selected New Jersey law, it too is nearly "identical" to the FAA and strongly favors arbitration agreements. *Arafa v. Health Express Corp.*, 233 A.3d 495, 506 (N.J. 2020). The Third Circuit and then-Chief Judge Wolfson have already enforced earlier versions of these exact commitments: in *Harper*, identical Flex misclassification claims were compelled to proceed in individual arbitration, *see Harper*, 12 F.4th at 296–97; *Harper*, 2022 WL 17751465, at *11—and critically, Judge Castner confirmed that the FAA and state law required a stay of the litigation pending completion of those arbitrations, *see Harper v. Amazon.com Servs., Inc.*, 2024 WL 3833522, at *3 (D.N.J. Aug. 15, 2024) (holding "the FAA [Section 3] as well as New Jersey's . . . arbitration statutes all support staying the claims in this case pending arbitration"). The Commissioner is now trying to litigate those same claims, on behalf of the same category of individuals, under the same agreements. Neither the FAA nor applicable state law permits that.

14

The Commissioner cannot ignore the arbitration agreements because the statute that he invokes places him in the shoes of the individual Delivery Partners. Section 34:1A-1.12(i) authorizes the Commissioner to seek individualized monetary relief "for one or more unnamed members of a class" and to pursue those claims "as if" the claims "were brought directly by the victims." That formulation—"as if"—embodies a well-established substitution principle: when a party litigates "as if" it were the original claimant—whether as a subrogee, assignee, or other substitute—it "steps into the shoes" of that party and acquires the claim subject to all of the original party's defenses, limitations, and contractual commitments. *In re Frescati Shipping Co.*, 886 F.3d 291, 308 n.24, 309 (3d Cir. 2018). Courts apply that substitution principle with rigor in the arbitration context, consistently holding that a subrogee or assignee must arbitrate whenever the original right-holder agreed to arbitrate. *See, e.g., Flexi-Van Leasing, Inc. v. Through Transp. Mut. Ins. Ass'n*, 108 F. App'x 35, 40 (3d Cir. 2004) (third-party beneficiary of contract bound by its arbitration provision); *Houston Cas. Co. v. Kinsale Ins. Co.*, 2025 WL 2779139, at *6 (D.N.J Sept. 30, 2025) (non-signatory that brings claims under a contract becomes bound by its arbitration provision).

Section 34:1A-1.12(i) operates in precisely the same way. By directing the Commissioner to pursue claims "as if" the Delivery Partners had brought them themselves, Section 34:1A-1.12(i) requires the Commissioner to inherit their contractual

15

obligations, including their agreement to arbitrate disputes and to waive any right to pursue or receive relief in a representative proceeding. *See, e.g., Sanford v. Bracewell & Guiliani, LLP*, 618 F. App'x 114, 118 (3d Cir. 2015) (a non-signatory who "embraces" a contract is estopped from "seeking to enforce terms of that contract or asserting claims based on the contract's other provisions" while also "turn[ing] its back" on the "arbitration clause"); *Facta Health, Inc. v. Pharmadent, LLC*, 2020 WL 5957619, at *4 (D.N.J. Oct. 8, 2020) (binding non-signatory to arbitration); *Neal v. Asta Funding, Inc.*, 2016 WL 3566960, at *17–18 (D.N.J. June 30, 2016) (same); *Town of Smyrna v. Kent Cnty. Levy* Court, 2004 WL 261745, at *4 (Del. Ch. Nov. 9, 2004) (same). Because the Commissioner invokes those private rights "as if" the Delivery Partners themselves brought them, he embraces the Flex agreements and is estopped from disavowing the arbitration obligation.

The Supreme Court's reasoning in *EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002), reinforces this result. *Waffle House* draws a bright line between (1) a government agency pursuing its own independent public-enforcement claim, which is not constrained by a private arbitration agreement, and (2) a government actor proceeding on behalf of private individuals, which is. The Court stressed that the EEOC could avoid the employee's arbitration agreement only because its rights were not "derivative" of the employee's, it was not "a proxy" for the employee, and it did not "stand in the employee's shoes." *Id.* at 288, 297. Under that statute, the EEOC had

16

"exclusive jurisdiction over the claim" and "the employee ha[d] no independent cause of action." *Id.* at 291. In short, "[t]he statute clearly [made] the EEOC the master of its own case." *Id.* Here, the statute eliminates any such independence: § 34:1A-1.12 requires the Commissioner to act precisely as a proxy—expressly "as if" the claims "were brought directly by the victims." Under *Waffle House*, that statutory choice is dispositive.

Once the Commissioner elects to proceed as a proxy, he is bound by the private parties' arbitration commitments. *See, e.g.*, *FDIC v. Ernst & Young LLP*, 2024 WL 247076, at *9–10 (E.D. La. Jan. 23, 2024) (compelling the FDIC as receiver to arbitrate a claim that the bank would have been required to arbitrate); *College Blvd. Nat'l Bank v. Credit Sys., Inc.*, 1994 WL 242670, at *1–2 (D. Kan. May 18, 1994) (same). He cannot invoke Section 34:1A-1.12(i) to obtain their rights while disavowing their obligations. The statute itself prevents that evasion.

Under Section 3, Delaware and New Jersey law, *Harper*, and the very statute the Commissioner invokes, these private claims belong in individual arbitration—and nowhere else.

### B.    Alternatively, the Court Should Stay All Claims Under Its Inherent Authority

Even "[i]f a Section 3 Mandatory Stay does not apply," the Court should still "stay the entirety of the matter" under its inherent authority to manage its docket and promote judicial economy. *Gov't Emps. Ins. Co. v. Elkholy*, 2024 WL 5202550, at

17

*4 (D.N.J. Dec. 23, 2024).  This Court has "broad discretion to stay proceedings as an incident to its power to control its own docket."  *Clinton v. Jones*, 520 U.S. 681, 706–07 (1997).  That authority applies with particular force where, as here, the same issues are already pending in arbitration and continued litigation would risk duplicative proceedings, inconsistent rulings, and wasted judicial and party resources.

Courts in this District routinely use their inherent authority to stay entire cases, including claims asserted by non-signatories, where the arbitrated and non-arbitrated issues are intertwined.  *See, e.g.*, *Elkholy*, 2024 WL 5202550, at *6 n.6 (D.N.J. Dec. 23, 2024); *Deering v. Graham*, 2015 WL 424534, at *10 (D.N.J. Jan. 30, 2015); *Crawford v. West Jersey Health Sys.*, 847 F. Supp. 1232, 1243 (D.N.J. 1994).  Most recently, in *Sheth v. Artech LLC*, 2025 WL 1588021 (D.N.J. June 5, 2025), the court stayed all claims pending arbitration—even the claims asserted against a non-signatory to the arbitration agreement—because the plaintiff's misclassification-based wage claims were "inextricably intertwined" with issues being arbitrated.  *Id.* at *5.

The same is true here.  Every claim the Commissioner presses—whether styled as "damages," "penalties," or "injunctive relief"—turns on the same threshold question already being arbitrated: whether Flex participants are properly classified as independent contractors.  *E.g.*, Compl. ¶ 31 ("The harms in this matter flow from the unlawful misclassification of Drivers employed by Amazon throughout the State of New Jersey.").  Allowing this case to proceed while the pending and threatened

arbitrations resolve the identical issues "'would be rife with opportunities for mutual interference, inconsistent rulings, and general procedural confusion.'"  *Sheth*, 2025 WL 1588021, at *5.

That risk is not hypothetical.  Arbitrations are already pending or imminent for at least two dozen New Jersey Delivery Partners raising precisely the same misclassification and wage-and-hour allegations the Commissioner asserts here.  *See* p. 8, *supra*.  Among those is the arbitration brought by Mr. Harper, who brought a putative class action similar to this one and was already compelled to individual arbitration to resolve these claims. *Harper*, 2022 WL 17751465, at *11.  A complete stay is therefore necessary to avoid conflicting outcomes and to ensure the orderly, efficient resolution of these disputes.  This stay would not harm any of the Delivery Partners that the Commissioner purports to represent: If any individual wants to arbitrate her claims, she can do so in accordance with her agreement.

## II.    The Commissioner Lacked Legal Authority to Bring This Case

The Complaint should independently be dismissed because the Commissioner lacks legal authority to bring this case.  Section 34:1A-1.12 gives the Commissioner only a narrow mandate to invoke the judicial power on behalf of the State.  Before he may sue, the statute requires (1) a verified complaint made by the Commissioner, and (2) representation by lawfully appointed counsel authorized to speak for the State.  Neither prerequisite was satisfied here.  The Complaint is unverified, and the

19

private lawyers who filed it were not appointed in accordance with the statutory and constitutional framework that governs the Attorney General's delegation of sovereign enforcement authority—requiring dismissal or, at minimum, disqualification of counsel.

A.    The Complaint Is a Nullity Because the Commissioner Did Not File the Verified Complaint the Statute Requires

New Jersey law expressly makes a verified complaint a condition of the Commissioner's authority to initiate litigation.  Section 34:1A-1.12(i) provides that the Commissioner may bring suit only by "making, signing, and filing a verified complaint against the employer."  N.J.S.A. § 34:1A-1.12(i).  Verification requires a sworn attestation to the truth of the allegations, supported by personal knowledge or admissible evidence.  *See* N.J. Ct. R. 1:4-7.  The Commissioner did not file a verified complaint here, and thus failed to satisfy the statute's express prerequisite to invoking judicial power.

Under New Jersey law, that failure is fatal.  When a statute conditions the ability to sue on filing a verified complaint, "[t]he lack of a verified complaint renders the complaint a nullity" and "insufficient to invoke the court's jurisdiction." *A.A. v. Gramiccioni*, 122 A.3d 353, 356 (N.J. App. Div. 2015).  The requirement is substantive, not technical: verification is the mechanism the Legislature chose to limit the Commissioner's ability to hale parties into court, ensuring that he invokes the State's coercive power only on the basis of *sworn and substantiated* allegations.

20

The Supreme Court has made clear that such statutory prerequisites matter: in *United States v. Providence Journal Co.*, 485 U.S. 693 (1988), the Court affirmed dismissal of a case for lack of jurisdiction because counsel attempted to act for the United States without first obtaining the authorization federal law required, rendering the filing a nullity. *Id.* at 708. Although the relevant statutory language in this case is different from the language governing the Court's decision in *Providence Journal*, the same principle applies: a complaint filed on the government's behalf that violates key procedural requirements is not a valid exercise of state power. By ignoring the statutory safeguard of verification, the Commissioner exceeded the authority the Legislature granted him. The Complaint is therefore a nullity and should be dismissed.

The lack of verification highlights a fundamental defect in this action. The Legislature required verification to ensure that when the Commissioner invokes the State's authority to assert individualized private claims "as if" he were the claimants, he does so on the basis of sworn, substantiated facts. Here he has done the opposite: filed a headless, unsworn complaint through private lawyers with no identified client, no personal knowledge, and no factual allegations tied to any actual individual. The lack of verification is thus both a statutory defect and evidence of the inadequacy of this representative attempt.

21

**B.    The Court Should Dismiss—or at Minimum Disqualify Counsel—Because the Commissioner's Lawyers Were Not Lawfully Appointed**

Even apart from the verification defect, this action cannot proceed because the lawyers purporting to represent the State were not lawfully appointed. New Jersey law strictly limits when—and how—the Attorney General may retain outside counsel. Those limits reflect a deliberate legislative choice: to prevent precisely the kind of unauthorized, contingency-fee deputization the Attorney General attempted here, and to preserve the Legislature's exclusive constitutional authority over appropriations. To that end, the Legislature barred State agencies from hiring their own lawyers, N.J.S.A. § 52:17A-11, and required that no special counsel may be employed unless (1) the Attorney General authorizes the appointment, (2) the Governor approves it, and (3) "appropriations have been made therefor." N.J.S.A. § 52:17A-13.

As the New Jersey Supreme Court recognized in *Driscoll v. Burlington-Bristol Bridge Co.*, 8 N.J. 433 (1952), the Legislature "contemplated that special counsel . . . be compensated out of funds appropriated by it," and any contrary practice "should be terminated." *Id.* at 494–95. The Attorney General's retention of Outten & Golden is based upon no appropriation, and relies instead on a contingency fee, and thus violates the exact safeguards *Driscoll* enforced. *See* Brownell Decl. Ex. B at 13–17. Without a legislative appropriation, the appointment is ultra vires. *Cf. State v. OptumRx, Inc.*, 2025 WL 3251201, at *10–14 (La. Ct. App. Nov. 21, 2025)

22

(holding that a state attorney general's contingency-fee contract with private counsel, absent legislative authorization, violates constitutional and statutory limits on sovereign representation). The action should therefore be dismissed, or, in the alternative, Outten & Golden should be disqualified as counsel for the State.

*Dismissal.* Courts have long held that a suit filed by an unauthorized representative of the sovereign cannot proceed. The U.S. Supreme Court has repeatedly explained that when a State designates who may "spea[k] as a sovereign entity," anyone else is not "the State's representative" and therefore lacks standing to litigate on the State's behalf. *Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 659, 664 (2019). Likewise, when an official loses the authority to represent the State, the official "lo[ses] standing," and the suit must be dismissed. *Hollingsworth v. Perry*, 570 U.S. 693, 710 (2013). Consistent with that principle, courts routinely dismiss actions initiated by state actors who lack statutory authorization to represent the sovereign. *See, e.g.*, *Thiebaut v. Colorado Springs Utils.*, 455 F. App'x 795, 800–01 (10th Cir. 2011); *Cheng v. WinCo Foods LLC*, 2014 WL 2735796, at *9 (N.D. Cal. June 11, 2014).

The same defect exists here. The Legislature imposed explicit prerequisites—including a legislative appropriation—before special counsel may represent the State. That statutory condition was not satisfied. Outten & Golden therefore lacks authority to speak for the Commissioner or the State, and the Commissioner may not

23

proceed through counsel who were not lawfully appointed. The Complaint they filed is a nullity, and dismissal is required.

Because the State may appear only through counsel properly empowered by statute, and because those statutory prerequisites were ignored, the Complaint should be dismissed in full.

***Disqualification.*** Even if the Court does not dismiss the case outright, it should at minimum disqualify Outten & Golden. As explained above, Outten & Golden were not lawfully appointed to represent the State in the first place. *See* pp. 22–24, *supra*. That defect alone requires disqualification: a lawyer who lacks lawful authority to exercise the State's sovereign power may not do so—a principle the Third Circuit recently applied in disqualifying an Acting U.S. Attorney whose appointment was ultra vires. *See United States v. Giraud*, — F.4th —, 2025 WL 3439752 (3d Cir. 2025).

Disqualification is required for an independent reason as well: Outten & Golden's compensation structure violates the professional-conduct rules governing lawyers who act for the State. Federal courts in this District apply the New Jersey Rules of Professional Conduct when evaluating disqualification. *Freeman v. Vicchiarelli*, 827 F. Supp. 300, 301–02 (D.N.J. 1993). And those rules impose heightened conflict-of-interest restrictions on lawyers "employed or retained by a public entity." *In re Opinion 697*, 188 N.J. 549, 568 (2006). Under RPC 1.8(k) and RPC

24

1.7(a), such counsel may not participate in any matter where their personal financial interests create a "substantial risk" of impairing independent judgment—and public entities cannot consent to such conflicts. *Id.* at 559–63.

The Uniform Ethics Code reinforces the same heightened duty. As "special" State officers or employees, special counsel retained by the Attorney General are subject to the Code's prohibition on participating in any matter in which they have a personal "financial interest" or "source of income" that could reasonably impair objectivity or independence of judgment. Uniform Code of Ethics, tit. IX.

Outten & Golden's arrangement triggers that conflict in its purest form. The firm's compensation structure gives it a personal financial interest in the monetary relief sought in this case—the very type of interest the ethics rules prohibit for lawyers acting on behalf of the State. *See* pp. 10–11, *supra*; Brownell Decl. Ex. B at 13–17. A lawyer with a personal contingent stake in the penalties it seeks to impose cannot exercise the State's prosecutorial authority with the independence that RPC 1.8(k), RPC 1.7(a)(2), and the Uniform Ethics Code demand.

*Driscoll* makes the point decisive. The New Jersey Supreme Court held that special counsel appointed to act for the State are, for these purposes, treated like lawyers in the Department of Law and therefore subject to the same statutory and constitutional restrictions. 8 N.J. at 494–95. Because State lawyers are barred from receiving contingent or supplemental compensation, *Driscoll* held that "special

25

counsel for the State" likewise may not receive such payments—and warned that any contrary practice "should be terminated, not perpetuated." *Id.* Outten & Golden's contingency-fee arrangement is exactly the kind of compensation *Driscoll* forbids, and its built-in financial stake is precisely the divided loyalty the Ethics Code prohibits.

If the Attorney General himself could not ethically or lawfully prosecute this case on a contingent-fee basis, neither can his designated "special counsel." Their unlawful appointment and their prohibited financial stake independently require disqualification.

## III.    Even If the Complaint Could Proceed, the Complaint Fails to State a Claim

Even apart from the Commissioner's threshold defects, this action rests on the flawed premise that Flex Delivery Partners are "employees" under New Jersey law. Compl. ¶¶ 3, 35, 115. The Complaint itself describes individuals who choose when to work, use their own vehicles and equipment, may perform similar services for competitors, and operate away from Amazon's facilities—facts inconsistent with employee status under New Jersey's framework. But even accepting the Commissioner's assertions for purposes of this motion, and apart from his threshold defects, the Complaint still fails because it does not plead a single plausible wage-and-hour violation. It identifies no injured Delivery Partner and alleges no concrete underpayment. Nor does it allege facts that would entitle the Commissioner to any of the

26

individualized monetary remedies he seeks.  The Complaint therefore fails as a matter of law.

### A.      The Complaint Fails to State Any Plausible Claim

The Complaint does not satisfy even the minimum pleading standard under Rule 12(b)(6).  It is a "headless" filing: it names no specific Delivery Partner, provides no dates, no hours worked, no rates of pay, and no factual allegations tying any particular person to any particular violation.  Instead, it offers only generalized assertions about "Drivers" and boilerplate recitations of statutory elements—exactly what *Twombly* and *Iqbal* hold is insufficient.

To survive a motion to dismiss, a plaintiff must plead facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint must "raise a right to relief above the speculative level," and cannot rely on "labels," "conclusions," or "a formulaic recitation of the elements."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The Commissioner's pleading fails this test.

#### 1.      The Complaint Does Not Identify a Single Allegedly Injured Worker

The Commissioner alleges that "Amazon misclassifies thousands of New Jersey Drivers as independent contractors each year," Compl. ¶ 16, but he does not identify a single allegedly injured Delivery Partner by name.  The Complaint offers

only three anonymous vignettes—"EN," "TG," and "SD." *Id.* ¶¶ 18–20. That is not sufficient to state a claim for relief.

Courts addressing similar "headless" enforcement complaints—especially where individualized damages are sought—have required the government plaintiff to identify the actual individuals for whom it seeks individualized relief. *See, e.g.*, *United States v. Philip Morris Inc.*, 153 F. Supp. 2d 32, 38–39 (D.D.C. 2001) (dismissing where the government "has not identified in [the] complaint the injured persons" whose injuries were essential to liability and relief); Brownell Decl. Ex. A (*District of Columbia v. Shipt, Inc.*, No. 2022-CA-004909-B, slip op. at 20 (D.C. Super. Ct. Aug. 30, 2023)) (same); *Perez v. Sanchez*, 2016 WL 721032, at *1 (D.S.C. Feb. 24, 2016) (holding that simply naming eight individuals who worked with defendant was insufficient). This has arisen in similar supposed enforcement efforts related to misclassification. In an action against Shipt for allegedly misclassifying delivery drivers as contractors, a D.C. court held that a governmental plaintiff "must identify the specific individuals" for whom it seeks damages "by name," and dismissed the claims where that was not done. Brownell Decl. Ex. A at 18–19.

The Commissioner's status as a government plaintiff in name does not excuse him from basic pleading requirements. A governmental representative may not proceed on vague "general accusation[s] . . . with a formulaic recitation of the elements" and no specific factual support. *Perez*, 2016 WL 721032, at *1. Courts that have

allowed government plaintiffs to proceed without identifying individual workers have done so only where they sought purely declaratory or structural relief—not when they sought individualized damages, penalties, or worker-specific remedies. *See, e.g.*, *Acosta v. Jani-King of Okla., Inc.*, 905 F.3d 1156, 1161 (10th Cir. 2018) ("the individual identities of the Janitorial Cleaners are not necessary at the pleading stage because the complaint is not seeking any individualized relief").

Here, every claim the Commissioner asserts—minimum wage, overtime, sick leave, penalties, and purported "misclassification" damages—requires him to plausibly allege that at least one specific worker suffered an injury cognizable under New Jersey law. His ability to obtain any relief at all is "wholly dependent on . . . showing the existence of persons injured." *Philip Morris*, 153 F. Supp. 2d at 38. Because the Complaint fails to identify a single injured worker or plead facts about any individual's circumstances—let alone on a verified basis as required by law—none of the Commissioner's causes of action are plausibly stated.

### 2.    The Complaint Fails to Plead Any Specific Minimum-Wage, Overtime, or Sick-Leave Violation

Even apart from the failure to identify injured workers, the Complaint does not plead facts that would make any of its wage-and-hour theories plausible.

***Minimum wage / wage deductions.*** The Commissioner asserts that "Amazon fails to pay Drivers the minimum wage rate for all hours worked," Compl. ¶ 61, and alleges in general terms that Delivery Partners incur unreimbursed expenses, *id.*

29

¶¶ 11, 23, 74, 80, but he does not allege that any Delivery Partner—at any time—was actually paid less than the applicable minimum wage after expenses.

Even the lone anecdote involving "TG" merely asserts that TG "regularly paid for tolls out of pocket" and speculates that unreimbursed expenses "at times" may reduce wages below the minimum, Compl. ¶ 19, without alleging that TG's pay ever *did* fall below the statutory floor. The Complaint pleads none of the facts *Twombly* and *Iqbal* require to "nudg[e]" a claim "across the line from conceivable to plausible"—no hours worked, no compensation received, no amounts deducted, no explanation of how any expense supposedly drove pay below the state minimum wage. *Twombly*, 550 U.S. at 570. Courts in this District reject precisely this type of pleading. In *Rodriguez v. Canada Dry Bottling Co.*, the court dismissed a nearly identical claim for unlawful deductions because such "naked assertions" require "factual enhancements in order to permit the Court to infer [that the] alleged deductions reduced wages below minimum wage." 2015 WL 5770502, at *3 (D.N.J. Sept. 30, 2015) (internal quotation marks and citation omitted). There, plaintiffs "merely list[ed] the items that they allege[d]" defendant "deducted from their wages," and "provide[d] no indication of what their weekly pay was or what they should have received as weekly pay absent the deductions." *Id.* Likewise, here, the Commissioner's allegations fail to permit any inference—much less a plausible one—that a single Delivery Partner ever received sub-minimum wages. The Complaint has merely "alleged—

but . . . not 'shown'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (alteration adopted, internal quotation marks and citation omitted).

*Overtime.* The New Jersey Wage and Hour Laws require 1.5 times the regular rate for each hour worked in excess of 40 hours in a workweek. N.J.S.A. § 34:11–56a4(b)(1). The Complaint alleges that "[m]any Drivers also work long hours without overtime pay" and provides a single "example" of "SD" allegedly "often" working over 40 hours without overtime. Compl. ¶¶ 20–21, 62, 83–84. But that allegation is nothing more than "'a formulaic recitation of the elements'" of an overtime violation: the Complaint does not allege SD's dates of work, SD's rate of pay, the weeks in which SD allegedly exceeded 40 hours, or any other concrete facts. *Maradiaga v. Pyle*, 2012 WL 3038596, at *2 (D.N.J. July 25, 2012) (quoting *Twombly*, 550 U.S. at 555).

Courts in this Circuit routinely dismiss overtime claims on that basis: where a plaintiff fails to allege "a single workweek in which [she] worked at least forty hours and also worked uncompensated time in excess of forty hours," the claim does not satisfy the governing standard, and dismissal is required. *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 243 (3d Cir. 2014); *see also Tan v. PKLL Inc.*, 2024 WL 1673352, at *3 (D.N.J. Apr. 18, 2024) (dismissing overtime claim where plaintiff "failed to include his hourly rate of pay in the Complaint"); *Maradiaga*, 2012 WL 3038596, at *2 (dismissing overtime claim where complaint offered only conclusory

31

allegations and failed to plead basic facts such as duties, dates of employment, rate of pay, or weekly hours worked).

*Sick leave.* The Complaint similarly alleges that Amazon fails to provide earned sick leave or to maintain records or notices as required by the Earned Sick Leave Law. Compl. ¶¶ 63, 93, 99–101; *see also* N.J.S.A. §§ 34:11D-2, -6, -7. But it provides only one anecdote about "EN," who allegedly did not work for 11 days due to a back injury and "los[t] income" she would have received had Amazon provided sick leave. Compl. ¶ 18. The Commissioner never alleges that EN—or any other Delivery Partner—worked the requisite number of hours to accrue sick leave or met any threshold under the Earned Sick Leave Law. That omission is fatal: as *Sirin v. Portx, Inc.*, 2020 WL 6194018 (D.N.J. Oct. 22, 2020), makes clear, a sick-leave claim is plausible only when the plaintiff alleges that she actually accrued earned sick leave and was nevertheless denied pay. *Id.* at *6. The Complaint does not allege that any Delivery Partner was entitled to accrue sick leave at all.

Across all statutory theories, the Complaint offers only generic assertions that "Drivers" are underpaid, denied overtime, or deprived of sick leave. It does not allege that any particular person in any particular week was paid below minimum wage, worked more than 40 hours without proper overtime pay, or accrued and was denied sick leave. That is not enough to put Amazon on notice of the claims against it, nor to satisfy Rule 8. Because the Complaint's factual allegations do not "raise a

32

right to relief above the speculative level," *Twombly*, 550 U.S. at 545, it should be dismissed in full.

### B.    The Commissioner's Claims for Individualized Damages Must Be Dismissed or Stricken

In all events, the Commissioner's claims for individualized damages cannot proceed and should be dismissed or stricken.  The New Jersey statute he invokes authorizes him to seek monetary relief only "as if the claims were brought directly by the victims."  N.J.S.A. § 34:1A-1.12(i).  But those individuals expressly waived any ability to pursue or receive classwide, collective, or representative monetary relief, agreeing that they could obtain relief only on an individual basis and not "participate in or receive any relief from any non-individual proceeding."  Jones Decl. Ex. A § 11d; *id.* Ex. C § 11d; *id.* Ex. D § 11d.  Because the Commissioner steps into the Delivery Partners' shoes—"as if" they brought the claims themselves—he cannot obtain forms of monetary relief they have contractually disclaimed.  Their waiver forecloses the Commissioner from seeking individualized damages.

Courts routinely dismiss claims or requested remedies that are unavailable as a matter of law.  Under Rule 12(b)(6), dismissal is appropriate where "there is clearly no remedy" or where the plaintiff has "no right to assert" the claim at all.  *K.J. ex rel. Lowry v. Div. of Youth & Family Servs.*, 363 F. Supp. 2d 728, 737 (D.N.J. 2005) (citing *Port Auth. v. Arcadian Corp.*, 189 F.3d 305, 311–12 (3d Cir. 1999)).  Alternatively, Rule 12(f) permits the Court to strike a request for damages that is legally

33

unavailable. A demand for damages may be stricken as "immaterial" or "insufficient" where those damages are not recoverable under the asserted cause of action. *Rivera v. Dealer Funding, LLC*, 178 F. Supp. 3d 272, 281 (E.D. Pa. 2016); *DeHart v. HomeEq Servicing Corp.*, 679 F. App'x 184, 189 (3d Cir. 2017).

Here, the Commissioner—through private class-action counsel—seeks precisely the individualized monetary relief that the Delivery Partners agreed they would not pursue in any representative capacity: backpay, liquidated damages, and worker-specific penalties. *See, e.g.*, Compl. ¶¶ 21, 25, 76, 81, 85, 95, 118; Demand for Relief ¶¶ (d)–(h). Because § 34:1A-1.12(i) limits the Commissioner to the remedies the Delivery Partners themselves could obtain, and because they waived any right to seek these monetary remedies in a representative action, the Commissioner's damages claims are legally unavailable in this judicial forum and must be dismissed or, at minimum, stricken. *See Lisowski v. Walmart Stores, Inc.*, 552 F. Supp. 3d 519, 532–33 (W.D. Pa. 2021) (exclusive contractual remedy forecloses other avenues for relief).

## CONCLUSION

The Court should stay this action under Section 3 of the Federal Arbitration Act or, alternatively, under its inherent authority. If the action is not stayed, the Court should dismiss the Complaint in its entirety or, at a minimum, disqualify the improperly appointed Special Counsel.

Dated:  December 17, 2025

Respectfully submitted,

*/s/ Rachel Seaton Brownell*

Jason C. Schwartz*
GIBSON, DUNN & CRUTCHER LLP
 1700 M Street, NW
 Washington, D.C. 20036
 Telephone:  202.955.8500
 JSchwartz@gibsondunn.com

Dhananjay S. Manthripragada (*pro hac vice* forthcoming)
GIBSON, DUNN & CRUTCHER LLP
 333 South Grand Avenue
 Los Angeles, CA 90071

Megan Cooney*
GIBSON, DUNN & CRUTCHER LLP
 3161 Michelson Drive
 Irvine, California 92612

Grace E. Hart*
GIBSON, DUNN & CRUTCHER LLP
 200 Park Avenue
 New York, New York 10166

Brian A. Richman*
GIBSON, DUNN & CRUTCHER LLP
 2001 Ross Avenue, Suite 2100
 Dallas, Texas 75201

Rachel Seaton Brownell (No. 021842011)
William P. McLane (No. 034481996)
Rachel Simone Frey (No. 217592017)
LITTLER MENDELSON P.C.
 1085 Raymond Blvd.
 One Newark Center, 8th Floor
 Newark, New Jersey 07102
 Telephone:  973.848.4762
 RSBrownell@littler.com

Andrew M. Spurchise (*pro hac vice* forthcoming)
LITTLER MENDELSON P.C.
 900 Third Avenue
 New York, New York 10022

* *pro hac vice*

35