Rachel Seaton Brownell (No. 021842011)
  RSBrownell@littler.com
LITTLER MENDELSON P.C.
  1085 Raymond Blvd., One Newark Center, 8th Floor
  Newark, NJ 07102
  Telephone: 973.848.4762

Jason C. Schwartz (*pro hac vice*)
  JSchwartz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
  1700 M Street, NW
  Washington, D.C. 20036
  Telephone: 202.955.8500

*Attorneys for Defendants (additional counsel listed on signature block)*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT ASARO-ANGELO, Commissioner of the New Jersey Department of Labor and Workforce Development,<br><br>     *Plaintiff,*<br><br>  v.<br><br>AMAZON.COM, INC., and AMAZON LOGISTICS, INC.,<br><br>     *Defendants.* | Hon. Madeline Cox Arleo<br><br>No. 2:25-cv-18014-MCA-JBC<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Motion Day: March 2, 2026 |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO STAY OR, IN THE ALTERNATIVE, TO DISMISS, STRIKE, OR DISQUALIFY

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ....................................................................................................1

ARGUMENT .........................................................................................................3

I.      The Commissioner Identifies No Basis to Avoid a Stay ...............................3

      A.     By Proceeding "As If" the Delivery Partners Brought These Claims, the Commissioner Is Bound to Arbitrate Them......................3

      B.     A Discretionary Stay Is Warranted.......................................................7

II.    The Commissioner Does Not Establish Authority to Maintain This Action........................................................................................................10

      A.     The Commissioner Cannot Excuse His Unverified Complaint..........10

      B.     The Opposition Confirms Special Counsel Lack Lawful Authority...............................................................................................11

III.   The Commissioner's Opposition Confirms That Dismissal Is Required......13

CONCLUSION ....................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta v. Jani-King of Oklahoma, Inc.*,
905 F.3d 1156 (10th Cir. 2018)..................................................................................14

*Ascot Specialty Ins. Co. v. Mason, Griffin & Pierson, P.C.*,
2025 WL 2388433 (D.N.J. Aug. 18, 2025)...................................................................6

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ..................................................................................................6, 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .....................................................................................................15

*Berk v. Choy*,
607 U.S. —, 2026 WL 135974 (2026)..........................................................................11

*Broussard v. First Tower Loan, LLC*,
150 F. Supp. 3d 709 (E.D. La. 2015) ...........................................................................9

*Clinton v. Jones*,
520 U.S. 681 (1997) ......................................................................................................7

*Davis v. Abington Memorial Hospital*,
765 F.3d 236 (3d Cir. 2014)........................................................................................15

*District of Columbia v. Shipt, Inc.*,
No. 2022-CA-004909-B, slip op. (D.C. Super. Ct. Aug. 30, 2023)...................14

*Driscoll v. Burlington-Bristol Bridge Co.*,
8 N.J. 433 (1952).................................................................................................2, 11, 12

*EEOC v. Waffle House, Inc.*,
534 U.S. 279 (2002) ......................................................................................................5

*FDIC v. Ernst & Young LLP*,
2024 WL 247076 (E.D. La. Jan. 23, 2024) .................................................................5

*Ferguson v. Corinthian Colleges, Inc.*,
733 F.3d 928 (9th Cir. 2013).......................................................................................6

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991) ...................................................................................................8

*Green Tree Fin. Corp.-Ala. v. Randolph*,
531 U.S. 79 (2000) ...................................................................................................6

*Harper v. Amazon.com Services, Inc.*,
2022 WL 17751465 (D.N.J. Dec. 19, 2022) ......................................................3, 6

*Houston Cas. Co. v. Kinsale Ins. Co.*,
2025 WL 2779139 (D.N.J. Sept. 30, 2025)..........................................................5

*Kindred Nursing Centers Ltd. P'ship v. Clark*,
581 U.S. 246 (2017) .................................................................................................7

*Martindale v. Sandvik, Inc.*,
800 A.2d 872 (N.J. 2002) ........................................................................................8

*Robert D. Mabe, Inc. v. OptumRX*,
43 F.4th 307 (3d Cir. 2022).....................................................................................8

*United States v. Providence Journal Co.*,
485 U.S. 693 (1988) ...............................................................................................11

*Viking River Cruises, Inc. v. Moriana*,
596 U.S. 639 (2022) .............................................................................................7, 9

*WorldCrisa Corp. v. Armstrong*,
129 F.3d 71 (2d Cir. 1997)......................................................................................9

## Statutes

9 U.S.C. § 3 .............................................................................................................1, 3

N.J.R.S. § 34:1A-1.12(i)................................................................................4, 10, 13, 14

## INTRODUCTION

The Commissioner does not dispute that the claims he seeks to litigate are the same claims Delivery Partners agreed to arbitrate; he disputes only whether that agreement matters. He does not deny that the arbitration agreements exist. He does not deny that Section 3 of the Federal Arbitration Act requires a stay when "any issue" is referable to arbitration. And he does not deny that he seeks individualized backpay, overtime, liquidated damages, and worker-specific penalties calculated by reference to each Delivery Partner's alleged wages.

Unable to contest those premises, he advances two maneuvers to avoid their consequence. First, he again asks the Court to stay consideration of Amazon's motion to stay pending arbitration until after the remand motion is resolved—that is, to stay a motion seeking a stay. He made the same request in his "Motion to Terminate or Stay Briefing." Dkt. 30-1. It has been separately briefed, and, as explained there, it has no legal basis. Dkt. 37. Courts routinely resolve arbitration issues before addressing remand or other jurisdictional disputes. If any issue in this case is referable to arbitration, the FAA—and the parallel New Jersey and Delaware arbitration statutes—*require* a stay pending arbitration. Regardless, the Court has inherent authority to enter a stay—authority the Commissioner does not dispute.

Second, the Commissioner recasts this case as sovereign "enforcement" supposedly immune from private arbitration commitments. But the statute he invokes

1

forecloses that move. It authorizes individualized recovery only "as if" the claims were brought by the victims themselves. Having elected to proceed in their stead, the Commissioner cannot disclaim the contractual obligations attached to those claims. And even if the statute could be read otherwise, a state-law device cannot be used to displace arbitration agreements protected by the FAA. However styled, a mechanism that nullifies bilateral arbitration by repackaging private claims as "enforcement" stands as an obstacle to the FAA and is preempted.

Even if the Court were to decline to enter a stay, this action cannot proceed. The Commissioner fails to cure other defects identified in Amazon's brief.

The Commissioner lacks authority to prosecute this action because he has not complied with the statutory conditions the Legislature imposed on the exercise of delegated enforcement power. Binding New Jersey Supreme Court authority holds that special counsel retained to act for the State may not personally retain a portion of a Court's award. *Driscoll v. Burlington-Bristol Bridge Co.*, 8 N.J. 433, 494–95 (1952). The Commissioner does not cite, distinguish, or acknowledge that authority, nor does he identify any legislative appropriation authorizing the contingent, outcome-based compensation structure used here. State law likewise directs that suit be initiated by filing a verified complaint. He admits he did not do so. Because these statutory prerequisites were not satisfied, the action must be dismissed. At a minimum, Special Counsel must be disqualified.

2

Finally, the Complaint fails to state a claim.  It does not plausibly allege a single concrete violation.  Although the Commissioner asserts that generalized allegations suffice, they do not under Rule 8 and governing precedent.  The Complaint—filed after an "investigation" (Opp. 4) conducted by outside private class-action counsel—identifies no specific workweek in which any Delivery Partner was paid below minimum wage, no week in which any individual worked more than forty hours without overtime, no rate of pay, and no factual basis from which an effective hourly wage can be calculated.  That is not a pleading technicality; it is the absence of an actual violation.  A complaint that cannot identify a single workweek in which the law was violated is defective.

## ARGUMENT

### I.     The Commissioner Identifies No Basis to Avoid a Stay

#### A.     By Proceeding "As If" the Delivery Partners Brought These Claims, the Commissioner Is Bound to Arbitrate Them

The Commissioner does not dispute that a stay is mandatory when an issue in a case is referable to arbitration—whether under Section 3 of the FAA or the parallel Delaware and New Jersey arbitration statutes.  He does not dispute that Amazon Flex Delivery Partners agreed to arbitrate disputes arising from their participation in Flex.  He does not dispute that those agreements require individual arbitration and prohibit representative proceedings.  And he does not dispute that identical misclassification and wage claims were compelled to arbitration in *Harper v. Amazon.com Services,*

3

*Inc.*, 2022 WL 17751465 (D.N.J. Dec. 19, 2022). His only response (Opp. 6–19) is that he is not a signatory and is acting in an "enforcement" capacity. That contention cannot be reconciled with the statute he invokes or governing federal law.

Section 34:1A-1.12(i) authorizes the Commissioner to recover monetary relief "on behalf of" victims and makes those remedies available "as if the claims were brought directly by the victims." That language is dispositive. It does not create an independent State damage claim. It ties individualized monetary recovery to the legal posture that would exist if the Delivery Partners themselves brought these claims. If the Delivery Partners had brought these claims directly, they would be required to arbitrate them individually. The statute does not say "notwithstanding any agreement." It says the remedies are available "as if" the victims brought the claims directly. That means the claims carry their contractual obligations with them.

That conclusion follows not only from the statute's text but also from the state-law principles the Commissioner himself acknowledges (Opp. 16). He concedes (Opp. 18–19) that non-signatories may be bound by arbitration under doctrines such as estoppel, including where a party asserts claims "based on" the contract containing the arbitration clause. Yet he never seriously grapples with that principle. His claims are predicated on the Amazon–Delivery Partner relationship created by the Flex Terms; he alleges misclassification within that contractual relationship and seeks monetary relief flowing from it. A non-signatory who asserts claims "based

on" a contractual relationship cannot invoke that relationship as a source of rights while disavowing the arbitration provision governing disputes arising from it. *Houston Cas. Co. v. Kinsale Ins. Co.*, 2025 WL 2779139, at *5 (D.N.J. Sept. 30, 2025).

The Commissioner's attempt (Opp. 16) to distinguish *FDIC v. Ernst & Young LLP*, 2024 WL 247076 (E.D. La. Jan. 23, 2024), fails. It is not dispositive that a government actor labels a suit "*enforcement*." Opp. 16. As *Ernst & Young* recognized, the government can "wea[r] many hats," and when it proceeds in a representative or derivative capacity rather than a regulatory one, it is bound by the arbitration commitments attached to the underlying claims. 2024 WL 247076, at *6, *9. The statute here tells us which hat the Commissioner must wear when seeking individualized wage recovery: the victims'. In that posture, arbitration follows.

The Commissioner's reliance (Opp. 10–15) on *EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002), underscores why arbitration follows here for two independent reasons. *First*, *Waffle House* turned on the fact that the EEOC did not "stand in the employee's shoes." 534 U.S. at 297. By contrast, the statute here expressly conditions recovery on treating the claims "as if" they were brought by the victims themselves—making the Commissioner's posture derivative by design and subjecting him to the same contractual limitations that bind the Delivery Partners.

*Second*, *Waffle House* arose in an all-federal context. The Court was reconciling the FAA with a separate federal enforcement statute; that separate federal

5

statute stood "on equal footing with the FAA." *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 936 (9th Cir. 2013). This case presents no such federal–federal balancing. Here, the Commissioner invokes a *state* statute, and the applicability of the FAA is uncontested.[1] The question, therefore, is not how two federal enactments coexist, but whether the state mechanism "stands as an obstacle to the accomplishment and execution of the full purposes and objectives" of the FAA. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 343 (2011). It plainly does.

Under *Concepcion*, a state rule stands as such an obstacle when it is "applied in a fashion that disfavors arbitration." 563 U.S. at 342–43. That is precisely what is occurring here. In substance and effect, the State is using its statute to aggregate and litigate the very individualized wage claims that the Delivery Partners agreed to resolve through bilateral arbitration. As Amazon explained in opposing remand (Dkt. 44 at 18–20), this is a privately financed, contingency-driven representative action—prosecuted by private counsel who tout their "qualifi[cation]" in litigating "representative matters described in [their] proposal" (Hart Declaration ¶ 4, Ex. B at

---

[1] The burden rests on the party "resisting arbitration" to show the FAA does not require enforcement of the agreement. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000). The Commissioner does not attempt to carry that burden. He suggests in a footnote (Opp. 8 n.6) "it is not even clear" the agreements could be enforced against Delivery Partners. A speculative aside does not satisfy the burden of proof. Nor does a footnoted suggestion preserve an argument; issues raised only in a footnote are waived. *Ascot Specialty Ins. Co. v. Mason, Griffin & Pierson, P.C.*, 2025 WL 2388433, at 8 n.9 (D.N.J. Aug. 18, 2025). In any event, *Harper* already stayed identical Flex misclassification claims based partly on the FAA.

6)—in which compensatory relief flows directly to workers, penalties fund private lawyers, and the State neither bears litigation risk nor retains meaningful recovery. It is difficult to conceive of a clearer example of a state-law mechanism displacing individualized arbitration, and to the extent any doubt remained, limited discovery into Special Counsel's pre-retention pitch communications would dispel it.

If this use of the statute were permitted, an individualized arbitration agreement would remain enforceable only at the State's sufferance. Whenever the State chose to append its name to aggregated private claims, bilateral arbitration would be displaced. That is not incidental tension with arbitration; it is the practical— "cover[t]"—nullification of individualized arbitration. *Kindred Nursing Centers Ltd. P'ship v. Clark*, 581 U.S. 246, 251, 255 (2017). The Supreme Court has rejected that maneuver time and again, striking down state rules that operate to require representative proceedings notwithstanding agreements to arbitrate individually. *See Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 659 (2022); *Concepcion*, 563 U.S. at 352. The State's approach here similarly "creates a scheme inconsistent with the FAA." *Concepcion*, 563 U.S. at 348.

### B.    A Discretionary Stay Is Warranted

Even if Section 3 or analogous state laws do not mandate a stay, the Court should exercise its inherent authority to enter one. The Commissioner does not dispute (Opp. 19–20) this Court has "broad discretion to stay proceedings." *Clinton v.*

7

*Jones*, 520 U.S. 681, 706–07 (1997).  The equities here present a straightforward choice: either preserve the Delivery Partners' contractual right to individualized arbitration, or permit a representative proceeding to override that chosen forum.

The Commissioner's equitable arguments amount to the same "suspicion of arbitration" the Supreme Court has rejected.  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30 (1991).  He characterizes the arbitration agreements as "imposed" and argues a stay would "delay" relief, harm the "public," and create inefficiencies.  Opp. 20–22.  But arbitration is not a defect that needs—in the Special Counsel's words—to be gotten "around."  Dkt. 23-1 at 9 (quoting Outten & Golden).  It is a binding contractual forum freely agreed to by the Delivery Partners.  Federal law "favor[s] arbitration."  *Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 325 (3d Cir. 2022); *accord Martindale v. Sandvik, Inc.*, 800 A.2d 872, 877 (N.J. 2002).

The Delivery Partners did not merely agree to arbitration in the abstract.  They agreed to individualized arbitration so that their wage claims would be assessed one by one—so that no representative could aggregate their claims, negotiate them collectively, or compromise them in exchange for a global resolution.  Yet this action seeks to litigate—or settle with binding effect—those same individualized claims in court, with the Commissioner emphasizing (Opp. 4) that he has "sole authority" to settle claims "without consulting the victims."  He claims the power to bargain away the Delivery Partners' wage claims on their behalf, "whether or not those terms are

8

in the best interest of the" Delivery Partners.  Comm'r Mot. to Remand 8 (Dkt. 29-1).  That is precisely what the Delivery Partners contracted to prevent.

The Commissioner effectively concedes that allowing this action to proceed would interfere with the arbitrations.  He argues (Opp. 22–23) that proceeding here would reduce "duplicative proceedings" and avoid "inconsistent rulings."  That contention assumes that this Court's adjudication would supplant or materially affect disputes the Delivery Partners agreed to arbitrate individually.  That is precisely the interference that warrants a stay.  As *WorldCrisa Corp. v. Armstrong* recognized, failure to stay litigation (even by a non-signatory) can result in "substantial prejudice" because parallel proceedings "would involve significant expense" and "might adversely affect the outcome of" arbitration.  129 F.3d 71, 76 (2d Cir. 1997).

The Commissioner attempts to justify this displacement by invoking (Opp. 20) "enforcement."  But "sovereign" enforcement authority cannot be used to avoid the FAA's mandate.  *Viking River*, 596 U.S. at 661.  And he cites no authority exempting a government plaintiff from the Court's inherent power to stay proceedings intertwined with arbitration; the law is to the contrary.  *See Broussard v. First Tower Loan, LLC*, 150 F. Supp. 3d 709, 719, 730 (E.D. La. 2015), *as modified*, 2016 WL 879995 (E.D. La. Mar. 8, 2016) (staying EEOC claims).  He likewise fails to grapple with cases Amazon cited (Mot. 18) in which courts stayed actions brought by non-signatories because underlying issues were subject to arbitration by signatories.

9

The Commissioner overstates (Opp. 15, 22) the nature of the State's interest in this case. The operative relief sought is individualized wage recovery flowing to Delivery Partners—not independent State interests (*see* pp. 4–5, *supra*). Whatever enforcement authority the Commissioner possesses, the claims driving this lawsuit are derivative wage claims subject to arbitration. There is no legal foundation for allowing representative litigation to override that contractual framework.

## II.    The Commissioner Does Not Establish Authority to Maintain This Action

### A.    The Commissioner Cannot Excuse His Unverified Complaint

The Commissioner does not dispute that the Complaint is unverified. Instead, he argues (Opp. 27–29) that verification is optional because § 34:1A-1.12(i) uses the word "may," and that Rule 11 displaces any such requirement. Both arguments misread the statute. Section 34:1A-1.12(i) provides that the Commissioner "may initiate the action by making, signing, and filing a verified complaint against the employer." The word "may" gives the Commissioner discretion *whether* to initiate an action; it does not give him discretion to ignore the statutory manner of initiation once he chooses to sue. The phrase "by making, signing, and filing a verified complaint" specifies *how* the action must be commenced. Saying the Commissioner "may initiate" an action by filing a verified complaint does not mean he may initiate it by filing something *else*. It is like saying a pedestrian "may cross at the green light"— that does not authorize crossing at the red. Once the Commissioner elects to proceed

10

under the statute, he must do so in the way the Legislature prescribed.

Rule 11 does not change that conclusion.  This is not a dispute about "procedural mechanism[s]" or "formality" (Opp. 29, 31); it is about whether the Commissioner satisfied the Legislature's express condition for invoking the State's enforcement authority.  Just as the Supreme Court in *United States v. Providence Journal Co.*, 485 U.S. 693, 708 (1988), held that counsel for the government had no authority to appeal without the authorization Congress required, the Commissioner cannot proceed here without satisfying the Legislature's condition for initiating suit.  Even if the verification requirement here were characterized as merely procedural—as the Commissioner erroneously claims (Opp. 28)—Rule 11 may "incorporat[e] some state affidavit laws." *Berk v. Choy*, 607 U.S. —, 2026 WL 135974, at *6 (2026).

**B.     The Opposition Confirms Special Counsel Lack Lawful Authority**

The Commissioner's Opposition does not cure the structural defects in the appointment of special counsel.  It confirms two independent grounds for relief. *First*, under *Driscoll v. Burlington-Bristol Bridge Co.*, 8 N.J. 433 (1952), the contingent, outcome-based compensation structure used here requires disqualification of special counsel. *Second*, absent a legislative appropriation authorizing that compensation, the Commissioner lacks authority to prosecute this action, requiring dismissal.

**1.**     The Commissioner does not dispute that New Jersey ethical rules govern the disqualification analysis, nor that the Supreme Court of New Jersey has held

11

that special counsel appointed to act for the State are bound by statutory and consti-tutional law that "expressly forbi[d]" their personal retention of an allowance for counsel fees. *Driscoll*, 8 N.J. at 494. The Commissioner does not cite, address, or even acknowledge *Driscoll*. *Cf.* Mot. 22, 25–26. Instead, he asserts (Opp. 26) that contingency arrangements are a "routine" feature of the legal landscape. *Driscoll* rejected that argument decades ago: "[W]e are not impressed by the [special coun-sel's] argument that the practice is to the contrary, for if that is the practice, it should be terminated." 8 N.J. at 494–95. That holding controls.

2.      The Commissioner also does not dispute that, absent a legislative ap-propriation authorizing special counsel's appointment, this action cannot proceed—or at minimum, special counsel must be disqualified. Instead, he cites the Fiscal Year 2026 Appropriations Act as supplying authorization. Opp. 25.

Even putting aside that the 2026 Act cannot have authorized the Commis-sioner's retention of special counsel because it was enacted *after* special counsel's alleged appointment, the Commissioner's description of the statute elides its mean-ing. He claims (Opp. 25) the power to use penalties "to pay legal fees for actions undertaken on behalf of the State." The statute does not say that; it provides that "revenues derived from penalties" may be used to "offset unbudgeted, extraordinary costs . . . incurred by the Division of Law." Comm'r Ex. 3 (Dkt. 45-4) at 212. That is a fiscal "offset" provision. It contemplates reimbursement of actual, "incurred"

12

costs, and only where those costs are "unbudgeted" and "extraordinary." It does not mention special counsel. Nor does it authorize forward-looking contingency arrangements granting counsel a percentage of the State's recovery—particularly where the State itself calls those arrangements "routine" (Opp. 26). Reimbursement of discrete, "extraordinary" costs is not "routine" profit participation.

## III.    The Commissioner's Opposition Confirms That Dismissal Is Required

**A.**    The Commissioner does not explain why the Court should not dismiss or strike his claims for individualized backpay, liquidated damages, and worker-specific penalties. He does not dispute that the Delivery Partners waived any right to pursue representative monetary relief. Instead, he dismisses this argument as a "repackaged arbitration argumen[t]." Opp. 39. It is not.

The Delivery Partners did not merely agree to arbitrate; they agreed that any relief must be pursued on an individual basis *and* waived any right to monetary recovery through representative proceedings. Mot. 33–34. That is, their waiver operates independently of arbitration. And § 34:1A-1.12(i) binds the Commissioner to it by authorizing recovery only "as if" the victims brought the claims themselves.

**B.**    Even setting that remedial limitation aside, the Commissioner fails to cure the Complaint's independent pleading failures, which require dismissal in full.

The Commissioner responds to Amazon's argument (Mot. 27–29) that the Complaint fails to identify the workers for whom individualized damages are sought

13

by clarifying (Opp. 33) that the allegedly misclassified Delivery Partners are "[a]ll of them."  That clarification underscores the defect.  The claims are not abstract misclassification claims; they are statutory wage claims seeking individualized back pay, liquidated damages, and worker-specific penalties.  Yet the Complaint still does not identify a single named individual for whom those damages are sought, nor does it allege facts tying a specific statutory violation to a specific worker.

Section 34:1A-1.12(i) may permit relief for "*unnamed*" persons (Opp. 33), but Rule 8 still requires factual allegations sufficient to make each claim plausible.  Group pleading that "all Drivers" (Opp. 34) were misclassified says nothing about whether any specific worker, for example, was paid "below the statutorily prescribed minimum wage rate," Compl. ¶ 80—one of the Commissioner's pleaded counts.

The Commissioner's reliance (Opp. 34) on *Acosta v. Jani-King of Oklahoma, Inc.*, 905 F.3d 1156 (10th Cir. 2018), is misplaced.  That decision emphasized the government was "not seeking any individualized relief." *Id.* at 1161.  Where, as here, the government *is* seeking such relief, courts require the government to identify specific individuals.  *District of Columbia v. Shipt, Inc.*, No. 2022-CA-004909-B, slip op. at 20 (D.C. Super. Ct. Aug. 30, 2023).  The Commissioner calls (Opp. 35 n.13) *Shipt* "mistaken," but he identifies no authority adopting *his* position.

C.     The Commissioner's Opposition likewise does not cure the substantive defects in his wage-and-hour theories.  He argues that generalized allegations—such

14

as that Delivery Partners were "at times" paid below minimum wage, that one Delivery Partner "often" worked more than forty hours, and that Amazon did not provide sick leave—are enough at the pleading stage.  Opp. 36–38.  They are not.

For minimum wage, the Commissioner points (Opp. 36) to allegations that Delivery Partners bore expenses and were "at times" paid less than the effective minimum wage.  But he still does not identify a single worker, a single workweek, the wages paid, the hours worked, or the expenses incurred.  Without those factual allegations, the Complaint does not nudge a minimum-wage claim "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

For overtime, he relies (Opp. 37) on *Davis v. Abington Memorial Hospital*, 765 F.3d 236 (3d Cir. 2014), but *Davis* requires at least "a single workweek" in which a worker worked over forty hours and was not paid overtime.  *Id.* at 243.  The Complaint identifies none.  Alleging someone "often" (Opp. 37) worked more than forty hours does not satisfy that standard.  *See Davis*, 765 F.3d at 243.

For sick leave, he contends (Opp. 38) that alleging Amazon did not "make sick leave *available*" is sufficient.  But even on his theory, he must allege that specific workers were *entitled* to such leave.  He does not.

## CONCLUSION

The Court should stay this action.  If the action is not stayed, the Court should dismiss the Complaint or, at minimum, disqualify the Special Counsel.

15

Dated:  February 20, 2026

Respectfully submitted,

*/s/ Rachel Seaton Brownell*

Jason C. Schwartz*
GIBSON, DUNN & CRUTCHER LLP
  1700 M Street, NW
  Washington, D.C. 20036
  Telephone:  202.955.8500
  JSchwartz@gibsondunn.com

Dhananjay S. Manthripragada†
GIBSON, DUNN & CRUTCHER LLP
  333 South Grand Avenue
  Los Angeles, California 90071

Megan Cooney*
GIBSON, DUNN & CRUTCHER LLP
  3161 Michelson Drive
  Irvine, California 92612

Grace E. Hart*
GIBSON, DUNN & CRUTCHER LLP
  200 Park Avenue
  New York, New York 10166

Brian A. Richman*
GIBSON, DUNN & CRUTCHER LLP
  2001 Ross Avenue, Suite 2100
  Dallas, Texas 75201

Rachel Seaton Brownell (No. 021842011)
William P. McLane (No. 034481996)
Rachel Simone Frey (No. 217592017)
LITTLER MENDELSON P.C.
  1085 Raymond Blvd.
  One Newark Center, 8th Floor
  Newark, New Jersey 07102
  Telephone:  973.848.4762
  RSBrownell@littler.com

Andrew M. Spurchise*
LITTLER MENDELSON P.C.
  900 Third Avenue
  New York, New York 10022

* *pro hac vice*
† application for admission *pro hac vice* pending

16